**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SHELIA D. SCHWARTZ,<br><br>      Plaintiff,<br><br>    v.<br><br>OPPORTUNITY INTERNATIONAL, INC. et al.,<br><br>      Defendants. | Case No. 1:14-cv-5775<br><br>Judge John W. Darrah |

**<u>DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

 

Respectfully submitted,

**OPPORTUNITY INTERNATIONAL, INC.,**
**CONNIE STRYJAK, AND VICKIE ESCARRA**

 /s Richard P. McArdle

Richard P. McArdle
Cintra B. McArdle
Seyfarth Shaw LLP
131 South Dearborn Street, Ste. 2400
Chicago, Illinois 60603
Phone: 312-460-5000
Fax: 312-460-7000
rmcardle@seyfarth.com
cmcardle@seyfarth.com
*Attorneys for Defendants*

**Introduction**

Plaintiff's breach of contract claim for severance pay is the guts of her complaint, and whether she received an "offer" from Opportunity International to enter into a contract for severance pay is critical to deciding this dispute. To that end, it is well settled that:

> So long as it is reasonably apparent that some further act of the purported offeror is necessary, the purported offeree has no power to create contractual relations, and there is as yet no operative offer.

*Cobb-Alvarez v. Union Pac. Corp.*, 962 F. Supp. 1049, 1054 (N.D. Ill. 1997) (*quoting* 1 Arthur Corbin, Corbin on Contracts, § 1.11(rev. ed. 1993)).

Plaintiff is the former Chief Philanthropic Officer for Opportunity International, Inc., a non-profit organization providing financial solutions to those living in poverty around the world. When Plaintiff was hired, she acknowledged multiple times in writing that she was at all times an at-will employee. Opportunity terminated her employment in May 2014. Plaintiff thereafter filed this lawsuit against the organization, its Chief Executive Officer, and its Sr. Vice President for Human Resources challenging her termination and asserting state common law and statutory claims.

Plaintiff's lawsuit invites this Court to create an enforceable contract where no such contract exists.[1] While Plaintiff alleges that Opportunity breached an alleged contract with her by denying her severance pay and compensation for unused vacation and sick days, her Complaint and the documents attached to it (and referenced within it) bar her claims. The documents establish that no enforceable contract existed between the parties, and that Plaintiff

---

[1] Defendants filed their Rule 11 Motion for Sanctions (Dkt. # 25) almost simultaneously with their Motion to Dismiss on grounds that before Plaintiff filed her lawsuit she twice admitted in writing that she failed to fulfill a material term of the alleged contract before her termination.

cannot establish either a contractual, statutory, or common law right to the payments she seeks. Thus, Plaintiff's Complaint should be dismissed with prejudice.

## Relevant Factual Allegations[2]

In 2012, Plaintiff worked for a non-profit with which she had been employed since 1993. (Cmpl. ¶9.) Sometime in 2012, Vicki Escarra (CEO of Opportunity) and Connie Stryjak (Sr. VP for Human Resources for Opportunity) approached Plaintiff about the Chief Philanthropic Officer position. (Cmpl. ¶10.) Schwartz "was hesitant to give up the salary, stability and tenure" of her current position. (Cmpl. ¶11.) On November 26, 2012, Stryjak wrote to Plaintiff:

> "It is with great pleasure that I provide you with additional details regarding our offer of employment to join the Opportunity International, Inc., as Chief Philanthropic Officer . . . To summarize our understanding, discussed below are the details of our arrangements."
>
> \*   \*   \*
>
> You will receive three (3) weeks of vacation and twelve (12) sick days each calendar year. For the first year, vacation and sick time will be prorated according to start date and may not be used during your introductory period."

(Cmpl. Ex. 2.) The November 26, 2012 letter also included information about a severance package, which might be available to Plaintiff at a later date under certain conditions set forth in the letter and "Exhibit A" attached to the letter. (Cmpl. 12; Cmpl. Ex. 1-2.)

The November 26, 2012 letter said the following about a possible severance package:

> You acknowledge that at all times during your employment with Opportunity or any of its affiliates, you will be employed on an at-will basis, which means either you or Opportunity can end the employment relationship at any time, for any lawful reason, with or without notice, with or without cause. Opportunity will offer you a severance package if it terminates your employment "without cause," during the first twenty-four (24) months of your employment. Details regarding the terms of the severance package are attached in Exhibit A.

(Cmpl. Ex. 2.) Exhibit A stated the following about a possible severance package:

---

[2] Plaintiff's factual allegations are assumed true for purposes of this Motion only. Plaintiff's legal and factual conclusions within her Complaint are omitted, as they must be.

> During the first twenty-four (24) months of your employment, if Opportunity terminates your employment "without cause," provided you first execute a Separation and Release Agreement that is substantially in the form of Exhibit B attached hereto, Opportunity agrees to pay you severance pay in an amount equal to twelve (12) months of your initial annual base salary ($325,000) or your annual base salary at the time of termination, which ever amount is greater, minus legally required federal and state payroll deductions. The severance pay shall be payable over twelve (12) months in approximately equal semi-monthly installments in accordance with Opportunity's normal payroll cycle.

(Cmpl. Ex. 1.) The "Exhibit B attached hereto" referenced in Exhibit A was a draft document entitled, "Separation and Release Agreement," which was missing information such as the name of the employee, the date on which that employee was notified that his or her employment would end, the date on which a "fully executed" copy of the agreement would be provided to Opportunity, and the amount of "base salary" he or she would receive. (Cmpl. Ex. 1.)

The November 26, 2012 letter also listed several documents that were included with the letter when it was sent to Plaintiff and which she was required to sign and return to Opportunity, among them were an "At Will Acknowledgment" and an "Interview Review Form." (Cmpl. Ex. 2.)

The "At Will Acknowledgment" states:

> I understand that Opportunity International — US is an "at will" employer meaning that I, the employee, have the right to terminate my employment, at any time, without cause or notice, and that Opportunity International has the same right.

(Ex. A to Mot.)[3] The "Interview Review Form" states:

> Were any promises or guarantees made to you during the interview process, other than your starting salary and job title? _____ Yes \_\_\_\_\_ No
>
>                 \*      \*      \*

---

[3] The Court may consider the documents attached to the Motion To Dismiss because Plaintiff refers to them in her Complaint (or they are referred to by the documents attached to her Complaint) and are central to her claims. *Duferco Steel v. M/V Kalisti*, 121 F.3d 321, 324 (7th Cir. 1997); *ABN Amro, Inc. v. Capital Int'l Ltd.*, 2007 U.S. Dist. Lexis 19601 (N.D. Ill. March 16, 2007).

> I understand that Opportunity International, Inc. is an at-will employer and that Opportunity International, Inc. does not guarantee employment for any length of time. If a job is made and accepted, employment is by the agreement of both you and Opportunity International, Inc. Either you or Opportunity International, Inc. may terminate the employment relationship at any time, for any reason, with or without cause by giving notice of termination to the other party. *I agree that my at-will status can only be changed if I enter into a written employment contract with the company signed by me and, the CEO, and one other Officer of the company. I understand that the only promises or guarantees on which I can rely, now or in the future, are ones made in writing and signed by the President and/or Chief Executive Officer of the company.*
>
> I understand that if a position is offered to me, and I accept it, there are no guarantees or promises regarding future raises, promotions, incentives, or any other type of compensation other than wage offered in the job offer.

(Ex. B to Mot.)(emphasis original.)

On November 27, 2012, Plaintiff signed the November 26, 2012 letter, the "At Will Acknowledgement," and the "Interview Review Form." (Cmpl. Ex. 2; Exs. A-B to Mot.) On the Interview Review Form, Plaintiff checked "No" in response to the question, "Were any promises or guarantees made to you during the interview process, other than your starting salary and job title?" (Ex. B. to Mot.) The lines above her signature on the November 26, 2012 letter state: "I accept the employment offer, and its terms, contained in this letter. I have received no promises other than those contained in this letter." (Cmpl. Ex. 2.)

Plaintiff began working for Opportunity on February 18, 2013.[4] (Cmpl. ¶14.) On March 18, 2013, Opportunity's Benefits Manager, Linda Ressinger, sent Plaintiff an email entitled, "New Hire Information," which contained several attachments, including the Employee Handbook. (Ex. C. to Mot.) The Employee Handbook included the following about vacation and sick days:

> A. Vacation

---

[4] This date is incorrect. Plaintiff's first day of employment was March 18, 2013.

4

> The following vacation policy applies to all regular full-time employees except for Introductory Employees and those employees employed in the State of California.
>
>                \*     \*     \*
>
> Over the course of one year, eligible employees will accrue vacation time based on years of employment as follows:
>
> • 1.25 days per month for a total of three weeks (15 days) of vacation each year for the first nine years of employment
>
>                \*     \*     \*
>
> Unused vacation time expires and may not be carried over from year to year, unless required by applicable law.
>
>                \*     \*     \*
>
> Upon termination of employment, any accrued, unused vacation days will be paid in full in the employee's last paycheck, in accordance with applicable law.
>
> B. Sick Leave
>
>                \*     \*     \*
>
> Sick leave becomes available on January 1. Over the course of one year, eligible employees are allowed sick time as follows:
>
> • 12 days per calendar year
>
>                \*     \*     \*
>
> Sick days are not reimbursable upon termination of employment.

(Ex. C to Mot.) In 2013, Plaintiff received her salary and a $30,000 bonus. (Cmpl. ¶15.)

On May 6, 2014, "without advance notice or warning," Plaintiff was told that her employment was terminated. (Cmpl. ¶17.) According to Plaintiff, Opportunity "lacked any legitimate grounds to terminate [her] employment" and Opportunity's stated reason "was not a valid reason and had never been mentioned to [her] during her 15 months of employment, nor during her performance evaluation." (Cmpl. ¶¶18-19.) Plaintiff does not identify Opportunity's "stated reason" in her Complaint. (Cmpl. ¶¶18-19.)

5

On May 11, 2014, Plaintiff sent a signed copy of a "Separation Agreement" to Opportunity. (Cmpl. ¶20.) Opportunity did not make payments under the "Separation Agreement," nor did it pay Plaintiff for twelve (12) unused sick days and 7.5 unused vacation days." (Cmpl. ¶¶20-23.) Plaintiff requested that Opportunity pay her for the unused sick and vacation days, but Opportunity refused citing to "policies outside the contract," which Plaintiff believed "she was not bound by." (Cmpl. ¶¶24-26.)

## Argument

**I.     Plaintiff's Breach Of Contract Claim Fails As A Matter Of Law.**

Plaintiff asserts that the November 26, 2012 letter was a contract between the parties for severance, and for the payment of unused vacation and sick days. Plaintiff's allegations and relevant documents included and referenced in her Complaint, however, establish that no contract existed for severance, unused vacation, or sick pay.

For a contract to exist under Illinois law, there must be: (1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff, (5) breach, and (6) damages. *Pniewski v. United States Bank Nat'l Assoc.*, 2014 U.S. Dist. LEXIS 35586, at *13 (N.D. Ill. Mar. 19, 2014) (*citing Ass'n Ben. Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007). "Thus, a breach of contract claim 'must be predicated on a valid and enforceable contractual obligation,' and whether a contract exists is a matter of law for determination by the court." *Id.* (*citing Ass'n Ben. Servs*, 493 F.3d at 849.)

Here, Plaintiff's Complaint establishes that the November 26, 2012 letter: (1) is not an offer for severance or for the payment of unused vacation and sick days and (2) lacks "definite and certain terms" concerning payment for unused vacation and sick days. As such, Plaintiff's breach of contract claim fails as a matter of law.

6

**A. The November 26, 2012 Letter Is Not An Offer For Severance Pay Or For Payment Of Unused Vacation And Sick Days.**

To be a legally sufficient offer, the language must be sufficient to induce "a reasonable belief in the recipient that he can, by accepting, bind the sender." *Pniewski*, 2014 U.S. Dist. LEXIS 35586, at *14 (*citing Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 561 (7th Cir. 2012); *see also Vill. of S. Elgin v. Waste Mgmt. of Ill., Inc.*, 810 N.E.2d 658, 672 (Ill. App. Ct. 2004) (*quoting* RESTATEMENT (SECOND) CONTRACTS, §26) ("A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent.") When "some further act of the purported offeror is necessary, the purported offeree has no power to create contractual relations, and there is as yet no operative offer." *Wigod*, 673 F.3d at 561 (*quoting* 1 Joseph M. Perillo, *Corbin on Contracts* §1.11, at 31). Indeed, "[a] party can prevent his suggestion from being treated as an offer by using 'suitable language conditioning the formation of a contract on some further step . . . such as approval by corporate headquarters.'" *Cobb-Alvarez*, 962 F. Supp. at 1054 (*quoting Architectural Metal Sys., Inc. v. Consolidated. Sys.*, 58 F.3d 1227, 1230 (7th Cir. 1995). Under such circumstances, no offer has been made.

For example, in *Cobb-Alvarez*, the court granted an employer's motion to dismiss a breach of contract claim concerning severance benefits because the alleged contract's language established that the employer had only made "an offer to make an offer" in the future for severance. The employer had provided certain employees with correspondence that set forth an enhanced severance plan, under which the employees could choose to submit an application to resign voluntarily and a signed release by a specific deadline, and in exchange the employees would receive severance packages. The correspondence also stated that applications had to be

7

approved by management and that requests could be "granted or denied based on business necessity." "Agents of defendants" made certain representations to the employees that their applications would be honored and that the employer would not use "business need" to deny them severance benefits. The plaintiffs' applications, however, were denied and they were subsequently terminated without severance benefits. The Court dismissed the breach of contract claim for severance benefits, holding that the correspondence at issue cannot be viewed as an offer "because further assent was required to consummate a termination agreement." As such, "[p]laintiffs could not have reasonably thought that [the employer'] receipt of their applications by the deadline would conclude the agreement."

Conversely, in *Wigod*, the court reached a different conclusion when considering whether a document constituted an offer to modify a loan. The document essentially stated that if the plaintiff lived up to her obligations to provide payments and requested information, then the defendant would provide her with a loan modification. The determinative issue for the court was that the document's language conditioned the provision of a loan modification *on certain further conduct of the plaintiff*, as opposed to future necessary action by the defendant, summarizing this distinction as follows: "Certainly, when the promisor conditions a promise on *his own* future action or approval, there is no binding offer. But when the promise is conditioned on the performance of some act *by the promisee* or a third party, there can be a valid offer." *Wigod*, 673 F.3d at 561 (emphasis in original).

Here, the November 26, 2012 letter is more like the correspondence in *Cobbs-Alvarez* and is therefore not an operative offer for severance that Plaintiff could accept simply by signing the letter. The rule in Illinois is that an employer has no obligation to provide severance, unless it entered into a valid and enforceable contract to do so. *Cobb-Alvarez*, 962 F. Supp. at 1053

8

(*citing Stacey v. Insurance Corp. of Ireland,* 545 N.E.2d 221, 231 (Ill. App. Ct. 1989)). No such contract existed here because the November 26, 2012 letter conditioned Plaintiff's eligibility and receipt of severance *on further action by Opportunity*. Specifically, the November 26, 2012 letter and Exhibit A to that letter provide that Opportunity "*will* offer you a severance package if it terminates your employment 'without cause,' during the first twenty-four (24) months of your employment" "provided that you first execute a Separation and Release Agreement that is substantially in the form of Exhibit B." (Cmpl. Ex. 2.) Exhibit B is a draft agreement that is missing critical terms, such as the employee's name, the date of termination, and the amount of severance. Further, Exhibit B requires a signature of Stryjak to be effective. Therefore, the November 26, 2012 letter expressly conditions a future offer of severance to Plaintiff on Opportunity's decision to terminate Plaintiff, Opportunity's determination that Plaintiff was terminated "without cause," Opportunity's preparation of a Separation and Release Agreement for Plaintiff that included the information missing from "Exhibit B," and Stryjak's signature. *See also Vill. of S. Elgin*, 810 N.E.2d at 672 ("Defendant's statement that it 'will agree' arguably gave plaintiff reason to know that a further manifestation of assent was necessary before a contract would be formed.")

Not only is this conclusion reasonable given the language, but it is consistent with Plaintiff's written concessions. When Plaintiff was hired, she agreed in writing that: (1) she received no promise or guarantee other than her salary and job title (both of which she did receive) and (2) "there are no guarantees or promises regarding future raises, promotions, incentives, or any other type of compensation other than wage offered in the job offer." (Cmpl. Ex. 2; Ex. B to Mot.) Plaintiff, however, asks this Court to either ignore the relevant documents,

9

or interpret them such that no further assent or future action was required by Opportunity. Such a conclusion is not reasonable.

Contrary to Plaintiff's apparent belief, she did not create an enforceable contract concerning the payout of unused vacation and sick days upon termination simply by signing the November 26, 2012 letter. Nowhere in the letter does it say that.

### B. The November 26, 2012 Letter Is Not Sufficiently Definite And Certain Concerning The Alleged Obligation To Pay Plaintiff For Unused Vacation And Sick Days At Termination.

"The absence of sufficiently definite and certain terms in both the offer and the acceptance bars the formation of a contract." *Pniewski*, 2014 U.S. Dist. LEXIS 35586, at *16 (*citing Ass'n Ben. Servs., Inc.*, 493 F.3d at 850); *see also Bus. Sys. Eng'g, Inc. v. IBM*, 547 F.3d 882, 888 (7th Cir. 2008) ("The principles of contract state that in order for a valid contract to be formed, an offer must be so definite as to its material terms or require such definite terms in the acceptance that the promises and performances to be rendered by each party are reasonably certain."); *see also Hull v. Paige Temp. Inc.*, 2005 U.S. Dist. LEXIS 28826 (N.D. Ill. Nov. 16, 2005) ("[T]o be enforceable, the contract must have been sufficiently definite and certain so that the terms of the contract can be determined or implied.")

Here, Plaintiff's allegations show that the November 26, 2012 letter is not an enforceable contract concerning the payout of unused vacation and sick days upon termination because the letter contains no clear and definite terms regarding such an obligation. Indeed, the only mention of vacation and sick days relevant to her 2014 employment is that she would "receive three (3) weeks of vacation and twelve (12) sick days each calendar year." There is no mention of terms addressing: when during a calendar year Plaintiff would receive those days; how they are accrued (e.g., on January 1 or *pro rata* each month), how they could (or could not) be used; if

they carry over in a given year (or not); and, most notably, whether Opportunity agrees to pay out for unused vacation or sick days upon termination.

Furthermore, Plaintiff's claim is contradicted by the policies she references in her Complaint. (Cmpl. ¶25; Ex. C to Mot.) On March 18, 2013, Opportunity's Benefits Manager sent Plaintiff the Employee Handbook as part of her new hire information. (Ex. C to Mot.) The handbook provides that employees like Plaintiff accrue 1.25 days of vacation each month. (Ex. C to Mot.) As such, by May 6, 2014 (the date Plaintiff was terminated), Plaintiff had accrued only 5 days of vacation. Plaintiff concedes, however, that she took more than 5 vacation days as of May 6, 2014. (Cmpl. ¶¶22-23).

As to sick days, the Employee Handbook provides that "[s]ick days are not reimbursable upon termination of employment." As of May 6, 2014, Plaintiff's remaining unused sick days were lost. In sum, Plaintiff already received more vacation time than she was entitled to as of her termination date, and she was not entitled to a payout for unused sick days.

## II. Plaintiff's Claim For Breach Of Duty Of Good Faith And Fair Dealing Fails.

Plaintiff asserts a stand-alone claim for breach of duty of good faith and fair dealing against Opportunity. Specifically, she claims that Opportunity breached the implied covenant of good faith and fair dealing by: (1) terminating her employment "without cause" "and (2) using that termination to refuse to pay her severance and for unused vacation and sick days. Her claim fails for several reasons.

First, it is well-settled that there is no stand-alone cause of action for breach of duty of good faith and fair dealing. *Cobb -Alvarez*, 962 F. Supp. 1049 at 1055 (*quoting Wolf v. F.R.G.*, 95 F.3d 536, 543 (7th Cir. 1996) ("[V]ague notions of fair dealing do not form the basis for an independent tort."). The duty has no independent basis and must be found, if at all, in a claim for breach of contract.

Second, even if Plaintiff's Complaint could be interpreted to assert breach of duty of good faith and fair dealing (Count II) as part of her breach of contract claim (Count I), which it cannot, no contract existed concerning severance, vacation, and sick pay. See section I above in which Defendants establish that there is no contract, and thus, there can be no breach of an implied contract term. *Cobb*, 962 F. Supp. at 1056.

Accordingly, Plaintiff is left with alleging that Opportunity breached the covenant by terminating her employment "without cause." This claim, however, also fails because the covenant "gives way" in the at-will employment context. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1444-45 (7th Cir. 1992). The covenant of good faith and fair dealing relates to requiring a party to exercise certain discretion reasonably, with proper motive, and consistent with the parties' reasonable expectations. Since at-will employees can be terminated for any lawful reason, the parties' expectations concerning the reason for the termination are limited. *Id.*

Here, Plaintiff has repeatedly acknowledged, in writing, that she was an at-will employee who could be terminated for a good, bad, or no reason. (Cmpl. Ex. 2; Exs. A-B to Mot.) For this reason, and contrary to Plaintiff's claim, the term "without cause" is irrelevant. (Cmpl. ¶35.) The "cause/without cause" analysis is only relevant *after the decision is made to terminate* and relates only to whether Opportunity will offer her severance. (Cmpl. Ex. 2.) That language can provide no guidance to the question of whether Opportunity should have terminated her employment, as Plaintiff has repeatedly admitted by acknowledging her at-will status.

For the same reasons, Plaintiff's allegations that "Defendants lacked any legitimate grounds to terminate [Plaintiff's] employment," and that "Defendants' stated reason for the termination of [Plaintiff's] employment was not a valid reason, and had never been mentioned to [her] during her 15 months of employment, nor during her performance evaluation" are also

irrelevant. (Cmpl. ¶¶18-19.) As a matter of law in Illinois, an at-will employee does not have a reasonable expectation that her employer will provide her with (in her view) a "legitimate" or "valid" reason for termination.

### III. Plaintiff Failed To Allege That She Exhausted Her Administrative Procedural Obligations Before Filing Her ERISA Claims.

Plaintiff asserts that the "Separation Agreement and vacation and sick day benefit plans are governed by the provisions of [ERISA]." (Cmpl. ¶39.) Nowhere in her Complaint, however, does Plaintiff allege that she exhausted the applicable administrative procedures that may apply to such plans, nor does she assure the Court that none exist.

Administrative exhaustion forwards the important public policy in favor of private settlement, as well as the Congressional policies underlying ERISA's requirement of an internal claims procedure. *Ames v. American Nat'l Can Co.*, 170 F.3d 751, 756 (7th Cir. 1999). For this reason, courts routinely exercise discretion to require claimants to first exhaust applicable administrative procedures before seeking redress in court. *Dougherty v. Ind. Bell Tel. Co.*, 440 F.3d 910, 919 (7th Cir. 2006) ("Failure to exhaust such [administrative] remedies precludes judicial consideration of the underlying issue."). Indeed, the Supreme Court reaffirmed these principles are critical to recognizing and upholding the deference courts are required to give plan or claims administrators' benefit determinations:

> Deference promotes efficiency by encouraging resolution of benefits disputes through internal administrative proceedings rather than costly litigation. It also promotes predictability, as an employer can rely on the expertise of the plan administrator rather than worry about unexpected and inaccurate plan interpretations that might result from de novo judicial review. Moreover, Firestone deference serves the interest of uniformity, helping to avoid a patchwork of different interpretations of a plan . . . result that "would introduce considerable inefficiencies in benefit program operation, which might lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them."

*Conkright v. Frommert*, 559 U.S. 506, 2010 U.S. LEXIS 3479, at *20-21 (2010) (citation omitted).

Here, there is nothing before the Court to establish that detailed claims procedures did or did not apply, and Plaintiff does not allege she exhausted such procedures before filing her Complaint. As such, Plaintiff's ERISA claims concerning severance, vacation, and sick pay are not ripe for adjudication.

IV. **Plaintiff's IWPCA & Attorneys' Fees Claims Fail Because Plaintiff's Complaint Shows That She Cannot Establish A Right To Payout Upon Termination Of Unused Vacation And Sick Days.**

Plaintiff's Illinois Wage Payment & Collection Act (IWPCA) claims relating to unused vacation and sick time are equally deficient. To maintain an IWPCA claim, Plaintiff must demonstrate she has "a right to compensation pursuant to an employment contract or agreement." *Martino v. MCI Communs. Servs.*, 2008 U.S. Dist. LEXIS 95155, at *26 (N.D. Ill. Nov. 20, 2008) (quoting Stark v. PPM Am. Inc., 354 F.3d 666, 672 (7th Cir. 2004); 820 ILCS 115/2. As set forth above, Plaintiff's Complaint establishes that she has no such right either because the November 26, 2012 letter does not provide for it or the vacation and sick leave policies show that she received all that she was entitled to. *See* Section I above. And as her IWPCA claims for unpaid "wages" fail, so does her claim for attorneys' fees under the Attorneys' Fees In Wage Actions Act (705 ILCS 225/1 et seq.).

V. **Plaintiff's Promissory Estoppel Claim Fails As A Matter Of Law.**

"[P]romissory estoppel is not a doctrine designed to give a party . . . .a second bite at the apple in the event that it fails to prove a breach of contract." *Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 677 (7th Cir. 2005). "[A] claim for promissory estoppel will only succeed where all the other elements of a contract exist, but consideration is lacking." *Id.*. If a plaintiff cannot establish the essential elements of a contract, e.g., an unambiguous promise, an offer, and

14

acceptance, a promissory estoppel claim based on the same alleged agreement necessarily fails as a matter of law. *Id.*

As Plaintiff's Complaint reveals that she cannot establish the existence of an enforceable contract, her promissory estoppel claim also fails. *See* Section I above.

Moreover, since Plaintiff concedes that she received consideration from Opportunity in the form of an annualized salary of $325,000, her promissory estoppel claim fails as a matter of law. The Seventh Circuit has held that "to allow the doctrine of promissory estoppel to be invoked where consideration exists, 'becomes a gratuitous duplication or, worse, circumvention of carefully designed rules of contract law.'" *Dumas*, 416 F.3d at 679 n9 (*quoting All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 869 (7th Cir. 1984).

## Conclusion

For the reasons set forth, Defendants Opportunity International, Inc., Vicki Escarra, Connie Stryjak respectfully request that this Court grant their Motion to Dismiss Plaintiff's Complaint with prejudice and enter Judgment for Defendants.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2014, a copy of DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS to be filed with the Clerk of Court via the Court's ECF system, which will serve notification of such filing on the following:

>Patricia A. Wise
>Zachary M. Clark
>NIEHAUS & ASSOCIATES, LTD.
>7150 Granite Circle, Suite 203
>Toledo, Ohio 43617
>wise@niehausassociates.com
>clark@niehausassociates.com
>
>Daniel Tarpey
>Kevin Mocogni
>Tarpey Wix LLC
>225 West Wacker Drive - Suite 1515
>Chicago, IL 60606
>dtarpey@tarpeywix.com
>kmocogni@tarpeywix.com

    /s Richard P. McArdle