UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHEILA D. SCHWARTZ, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 14-cv-5775 |
| | ) |
| OPPORTUNITY INTERNATIONAL, | ) Judge John W. Darrah |
| INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Sheila D. Schwartz filed a Complaint against Opportunity International, Inc., ("Opportunity"); Vicki Escarra; and Connie Stryjak, alleging various claims related to the termination of Schwartz's employment. Defendants filed a Motion to Dismiss all claims. For the reasons discussed below, Defendants' Motion to Dismiss is granted in part and denied in part.

### BACKGROUND

The following is taken from the Complaint, which is assumed to be true for the purposes of a motion to dismiss. *Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 763 (7th Cir. 2010). Opportunity is an Illinois corporation. (Compl. at ¶ 5.) Vicki Escarra is the CEO of Opportunity, and Connie Stryjak is the Chief Human Resource Officer. (*Id.* at ¶¶ 7-8.)

From 1993 to 2012, Schwartz was employed by ProMedica, a non-profit healthcare system. (*Id.* at ¶ 9.) Escarra approached Schwartz about accepting a job with Opportunity as its Chief Philanthropic Officer. (*Id.* at ¶ 10.) Defendants offered a separation agreement as an addendum to the proposed employment agreement in an effort to persuade Schwartz to accept the position. (*Id.* at ¶ 12.) Stryjak sent a letter with additional details about the job offer.

(Compl. Ex. 2.) The letter stated that Schwartz would be an at-will employee: "You acknowledge that at all times during your employment with Opportunity or any of its affiliates, you will be employed on an at-will basis, which means either you or Opportunity can end the employment relationship at any time for any lawful reason, with or without notice, with or without cause." (*Id.*) The letter also stated that Schwartz would be offered a severance package if it terminated her employment without cause in the first twenty-four months:

> During the first twenty-four (24) months of your employment, if Opportunity terminates your employment "without cause," provided you first execute a Separation and Release Agreement that is substantially in the form of Exhibit B attached hereto, Opportunity agrees to pay you severance pay in an amount equal to twelve (12) months of your initial annual base salary . . . or your annual base salary at the time of termination, which ever amount is greater, minus legally required federal and state payroll deductions. The severance pay shall be payable over twelve (12) months in approximately equal semi-monthly installments in accordance with Opportunity's normal payroll cycle.

(*Id.*) In regard to vacation and sick days, the letter stated: "You will receive three (3) weeks of vacation and twelve (12) sick days each calendar year. For the first year, vacation and sick time will be prorated according to start date and may not be used during your introductory period." (*Id.*)

The offer was made contingent on Schwartz's acceptance of an Arbitration Agreement, a Confidentiality and Non-Disclosure Agreement, an At Will Acknowledgement, satisfactory reference checks, and successful completion of a background check and a drug test. (*Id.*) Relying on the Separation Agreement, Schwartz accepted the position of Chief Philanthropic Officer with Opportunity and started on February 18, 2013. (Compl. at ¶ 14.)

Schwartz exceeded her performance goals in 2013 and received a performance bonus.

(*Id.* at ¶ 15.) On May 6, 2014, Defendants terminated Schwartz's employment. (*Id.* at ¶17.) Defendants' reason for terminating Schwartz's employment had not been mentioned to her during her employment or during her performance evaluation. (*Id.* at ¶ 19.) Schwartz transmitted a signed copy of the Separation Agreement to Defendants on May 11, 2014. (*Id.* at ¶ 20.) Defendants did not pay Schwartz for 12 unused sick days and 7.5 unused vacation days. (*Id.* at ¶ 23.) Schwartz requested payment for the unused days, but Defendants refused payment. (*Id.* at ¶ 25.) Schwartz filed the instant Complaint on July 28, 2014.

**LEGAL STANDARD**

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A complaint must allege enough facts to support a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). Facial plausibility exists when the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). All well-pleaded allegations are presumed to be true, and all inferences are read in the light most favorable to the plaintiff. *Lavalais v. Village of Melrose Park,* 734 F.3d 629, 632 (7th Cir. 2013). This presumption is not extended to 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.' *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013) (quoting *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009)). The complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555).

**ANALYSIS**

Schwartz's Complaint alleges seven claims. Count I is a breach of contract claim against Opportunity. Count II is a breach of the duty of good faith and fair dealing claim against Opportunity. Count III alleges Opportunity violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1001 *et seq.* Count IV alleges Opportunity violated the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILL. COMP. STAT. 115/1 *et seq.* Count V alleges Escarra and Stryjak violated the IWPCA. Count VI requests attorney fees from all Defendants under the IWPCA. Count VII is a promissory estoppel claim against all Defendants.

*Count I - Breach of Contract*

Schwartz alleges that she and Opportunity entered into a valid and enforceable contract when both parties signed the November 26, 2012 letter. Defendants respond that the letter did not establish a contract for severance, unused vacation, or sick pay.

To establish a breach of contract claim, Schwartz must allege: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Hess v. Kanoski & Associates*, 668 F.3d 446, 452 (7th Cir. 2012) (quoting *Henderson-Smith & Assoc., Inc. v. Nahamani Family Serv. Ctr., Inc.*, 752 N.E.2d 33, 43 (Ill. App. Ct. 2001). "The question of the existence of a contract is a matter of law for determination by the court." *Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 849-50 (7th Cir. 2007) (citing *Arneson v. Bd. of Trs., McKendree Coll.*, 569 N.E.2d 252, 256 (Ill. App. Ct. 1991); *Robinson v. Christopher Greater Area Rural Health Planning Corp.*, 566 N.E.2d 768, 772 (Ill. App. Ct. 1991)).

Defendants argue that there was no offer for severance pay or for payment of unused vacation and sick days. The test for an offer is whether it induces a reasonable belief in the recipient that she can, by accepting, bind the sender. *Architectural Metal Sys., Inc. v. Consol. Sys., Inc.*, 58 F.3d 1227, 1229 (7th Cir. 1995). Additionally, "when the promisor conditions a promise on his own future action or approval, there is no binding offer." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 561 (7th Cir. 2012). Here, the language could have induced a reasonable belief that Schwartz could bind Defendants by accepting the offer. The offer of a severance package was not conditioned on future approval or further action manifesting assent. In the case cited by Defendants, *Cobb-Alvarez v. Union Pacific*, 962 F. Supp. 1049 (N.D. Ill. 1997), the severance package was conditioned on further approval from the company. *Cobb-Alvarez*, 962 F. Supp. at 1052 ("[a]pplications to participate in the VFRP must have approval of the Vice President–Human Resources, Union Pacific Railroad"). A reasonable person in Plaintiff's position would read the November letter as a definite offer for a job that included a severance payment if she was terminated "without cause" in the first 24 months.

Defendants' Motion to Dismiss Count I is denied as to severance pay.

In contrast, nothing in the letter states that the job offer included payment for unused vacation and sick days. There was no reason for Schwartz to believe, based on this letter, that she would be compensated for unused vacation and sick days. Schwartz's proration argument is unclear and unavailing as proration does not require that vacation or sick days be payable at all, let alone in full. Schwartz has not pled a valid and enforceable contract as to payment for unused vacation and sick days.

5

Defendants also argue that the November letter was not sufficiently definite and certain regarding the payment of unused vacation and sick days. For a breach of contract claim, there must be definite and certain terms. *Ass'n Ben. Servs., Inc.*, 493 F.3d at 849 (citing *MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC*, 845 N.E.2d 22, 30 (Ill. App. Ct. 2006)). Under Illinois law, "a contract is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do." *Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 850 (7th Cir. 2007) (quoting *Quinlan v. Stouffe*, 823 N.E.2d 597, 603 (Ill. App. Ct. 2005)). As stated above, the letter does not mention anything about unused vacation and sick days. As such, the letter's terms were not sufficiently definite and certain for payment of unused vacation and sick days.

Defendants' Motion to Dismiss Count I is granted without prejudice as to payment for unused vacation and sick days.

*Count II - Good Faith and Fair Dealing*

In Count II, Plaintiff claims that Defendants' conduct in terminating her without cause was a breach of the implied covenant of good faith and fair dealing. Under Illinois law, the implied covenant of good faith and fair dealing is imputed into every contract, "but a breach of good faith and fair dealing does not create an independent cause of action separate from the breach of contract claim." *Cobb-Alvarez v. Union Pac. Corp.*, 962 F. Supp. 1049, 1055 (N.D. Ill. 1997). Rather, good faith and fair dealing are used as construction aids in determining the parties' intent. *Anderson v. Burton Associates, Ltd.*, 578 N.E.2d 199, 203 (Ill. App. Ct. 1991).

"[W]here an instrument is susceptible of two conflicting constructions, one which imputes bad faith to one of the parties and the other does not, the latter construction should be adopted." *Martindell v. Lake Shore Nat. Bank*, 154 N.E.2d 683, 690 (Ill. 1958).

Further, "the covenant of good faith, which is a principle of construction, gives way to the rule that an employment at-will contract is terminable for any reason." *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1444 (7th Cir. 1992). To the extent that "employment at-will cases . . . hold that the covenant has not been breached where the employer's actions accord with the reasonable expectations of the parties," good faith and fair dealing bear upon the breach of contract claims. *Id.* at 1445.

Plaintiff claims that Defendants' conduct in terminating her without cause was unreasonable and in bad faith (Compl. at ¶ 35), but the alleged conduct would still be a breach of an express contract. Defendants may have breached their duty of good faith and fair dealing when they allegedly failed to perform under the contract, but that is not a separate claim. *See Cobb-Alvarez*, 962 F. Supp. at 1055 ("Any breach of the implied covenant of good faith and fair dealing must be encompassed in the claim of breach of contract.").

Defendants' Motion to Dismiss Count II is granted with prejudice.

### *Count III - ERISA*

In Count III, Plaintiff alleges that the Separation Agreement and vacation and sick day benefit plans are governed by ERISA and that Defendants intended to interfere with her benefits under those plans by terminating her employment. ERISA covers an "employee welfare benefit plan or an employee pension benefit plan or a plan which is both . . ." 29 U.S.C. § 1002(3).

"A welfare plan requires five elements: (1) a plan, fund or program, (2) established or maintained, (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits, (5) to participants or their beneficiaries." *Ed Miniat, Inc. v. Globe Life Ins. Grp., Inc.*, 805 F.2d 732, 738 (7th Cir. 1986) (citing *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982)).

Plaintiff has not sufficiently alleged that there was a welfare plan established or maintained by Defendants for the purpose of sick days and vacation benefits. Plaintiff merely says that "the Separation Agreement and vacation and sick day benefit plans" are governed by ERISA. This is a legal conclusion that is not presumed to be true. *See Alam*, 709 F.3d at 666. Further, a severance plan falls under ERISA's coverage when the plan requires an ongoing administrative program to meet the employer's obligation. *Bowles v. Quantum Chemical Co.*, 266 F.3d 622, 631 (7th Cir.2001). Severance packages do not fall under ERISA when the only determination for receiving severance is whether they were fired with or without cause, as that does not "require multiple decisions and [does not] require decisions to be made on an ongoing basis." *Lefebvre v. Duff & Phelps Inv. Mgmt. Co.*, Case No. 04-CV-4561, 2004 WL 2434235, at *2 (N.D. Ill. Oct. 28, 2004). Here, the only determination of whether Plaintiff would receive a severance plan was if she was terminated without cause. Plaintiff does not allege that this severance plan required an ongoing administrative program or multiple decisions on an ongoing basis.

Defendants' Motion to Dismiss Count III is granted without prejudice.

*Counts IV & V – IWPCA*

In Counts IV and V, Plaintiff claims that compensation for her unused vacation and sick days are wages owed her as final compensation under the IWPCA. But, "the IWPCA requires a right to compensation pursuant to an employment contract or agreement." S*tark v. PPM Am., Inc.*, 354 F.3d 666, 672 (7th Cir. 2004) (citing 820 ILL. COMP. STAT. 115/2). As stated above, there is no contractual right to compensation for Plaintiff's unused vacation and sick days. Therefore, Plaintiff has no claim under the IWPCA. Defendants' Motion to Dismiss Counts IV and V is granted without prejudice.

*Count VI – Attorney's Fees*

As there is no claim under the IWPCA for wages, Plaintiff's claim for attorney fees under the Attorneys Fees in Wage Actions Act, 705 ILL. COMP. STAT. 225/1 *et seq.*, also fails. Defendants' Motion to Dismiss Count VI is granted without prejudice

*Count VII – Promissory Estoppel*

In Count VII, Plaintiff alleges that if there was no contract as to severance pay or unused vacation and sick days, then she should prevail under the doctrine of promissory estoppel. For a promissory estoppel claim, a plaintiff is required to plead: "(1) defendants made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 677 (7th Cir. 2005). A promissory estoppel claim succeeds if all contract elements are present and only consideration is lacking. *Id.* Therefore, a

plaintiff must present evidence of an "unambiguous promise which, but for the existence of bargained-for consideration, would constitute an enforceable contractual agreement." *Id.*

Schwartz is correct that she may plead promissory estoppel in the alternative to her contract claims. *See Song v. PIL, L.L.C.*, 640 F. Supp. 2d 1011, 1016 (N.D. Ill. 2009) (citing F.R.C.P. 8(d)(2)). Schwartz has successfully pled promissory estoppel as to severance pay. Schwartz alleges that she was promised severance pay if her employment was terminated without cause within the first 24 months. Schwartz also alleges that this promise was made by Defendants to entice her to take the position after she initially turned Defendants down. She relied on this promise when quitting her job with ProMedica and accepting Defendants' offer. This reliance was to her detriment because Defendants terminated her employment. Defendants' Motion to Count VII is denied as to severance pay.

Schwartz has not pled an unambiguous promise to be compensated for unused vacation and sick days. Defendants' Motion to Dismiss Count VII is granted without prejudice as to unused vacation and sick days.

## CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss [24] is granted in part and denied in part. Defendants' Motion to Dismiss Count I as to payment for unused sick and vacation days and Counts III, IV, V, VI, and VII as to unused sick and vacation days is granted without prejudice. Defendant's Motion to Dismiss Count II is granted with prejudice. Defendants' Motion to Dismiss Count I as to severance pay and Count VII as to severance pay is denied.

Plaintiff may file an amended complaint as to Counts dismissed without prejudice consistent with the requirements of Rule 11 of the Federal Rules of Civil Procedure within thirty days of the entry of this order.

Date: January 21, 2015

/s/ JOHN W. DARRAH
United States District Court Judge