UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHEILA D. SCHWARTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 14-cv-5775 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| OPPORTUNITY INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Sheila Schwartz filed an Amended Complaint against Opportunity International, Inc. Plaintiff alleges one claim for breach of contract and one claim for promissory estoppel. Defendant filed a Motion for Summary Judgment on the Amended Complaint. For the reasons set forth more fully below, Defendant's Motion for Summary Judgment [66] is denied.

## **LOCAL RULE 56.1**

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A nonmovant's "mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). In the case of any disagreement, the nonmoving party must reference affidavits, parts of the record, and other

materials that support his stance. Local Rule 56.1(b)(3)(B). To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact is admitted. *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005). Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact that relies upon inadmissible hearsay, such a fact is disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). Pursuant to Local Rule 56.1(b)(3)(C), the nonmovant may submit additional statements of material facts that "require the denial of summary judgment."

## BACKGROUND

The following facts are taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1.

Opportunity International, Inc. is a non-profit organization registered in Illinois. (DSOF, ¶ 3.) Plaintiff lives in Adrian, Michigan, and was employed by Opportunity as its Chief Philanthropic Officer ("CPO") from March 18, 2013, until her termination on May 6, 2014. (*Id.* ¶ 2). During the time of Plaintiff's employment, Opportunity's headquarters were located in Oak Brook, Illinois. (*Id.* ¶ 3.)

Between September and November 2012, Plaintiff communicated with Paula Berezin, a strategic consultant, and Vicki Escarra, then Chief Executive Officer, about Opportunity and the possibility of becoming Opportunity's CPO. (*Id.* ¶ 4.) Plaintiff stated that she could move at that time but would be willing to relocate after her son graduated from high school. (*Id.* ¶¶ 7-8.) Escarra told Plaintiff that they would be open to a commuting arrangement until then. (*Id.* ¶ 8.) Berezin said that Escarra would probably accept Plaintiff working from the Oak Brook office two to three days per month. (PSOF ¶ 5.) Plaintiff suggested that she spend "five to seven days

2

per month at the Chicago office."  (DSOF ¶ 9.)  Plaintiff knew that Opportunity's offices were in Oak Brook at the time but knew about a plan to move headquarters to Chicago.  (*Id.*)  Escarra responded that she was "thrilled beyond words."  (PSOF ¶ 6.)

Plaintiff and Escarra also discussed Plaintiff's salary.  (*Id.* ¶ 11.)  Plaintiff told Escarra that she wanted a severance package as part of the offer of employment.  (*Id.* ¶ 12.)  Escarra was in favor of the severance and turned the issue over to Connie Stryjak, Opportunity's Chief Human Resource Officer, along with the job of putting together Opportunity's offer to Plaintiff.  (*Id.*)  In November 2012, Plaintiff and Stryjak discussed the terms of an employment offer, including a severance package.  (*Id.* ¶ 15.)  On November 24, 2012, Stryjak told Plaintiff that Opportunity would offer her a twelve-month severance agreement for her first two years of employment.  (*Id.* ¶ 17.)  On November 26, 2012, Stryjak sent an offer of employment to Plaintiff which consisted of some correspondence, a package of documents, the details of the severance package, and a form release.  (*Id.* ¶ 18.)  Plaintiff signed the correspondence on November 27, 2012, and testified that she accepted the offer by doing so.  (*Id.* ¶ 19.)

As to the commuting arrangement, the contract states:  "You will work from your home office in Adrian, MI, until the fall of 2014.  During that time, you will be expected to spend approximately seven days per month working from the Oak Brook office.  In the fall of 2014, it is anticipated that you will relocate to the Chicagoland area and work full-time from the headquarters location."  (*Id.* ¶ 21.)  Plaintiff testified that, at the time of signing the contract, she understood Opportunity's headquarters were the Oak Brook office.  (*Id.*)  Plaintiff also testified that she did not ask why that paragraph read as it did and did not ask to change the paragraph.  (*Id.* ¶ 22.)

As to the severance package, the contract states: "Opportunity will offer you a severance package if it terminates your employment 'without cause,' during the first twenty-four months of your employment." (*Id.* ¶ 26.) The contract further states that if Plaintiff was fired "without cause," within the first twenty-four months of employment, Opportunity would pay "severance pay in an amount equal to twelve (12) months of [Plaintiff's] initial base salary ($325,000) or [Plaintiff's] annual base salary at the time of termination, which ever amount is greater, minus legally required federal and state payroll deductions." (*Id.*) If Plaintiff was fired with cause or for any other reason after twenty-four months of employment, termination would be effective immediately, and Plaintiff would be entitled to no severance or compensation except that required by law. (*Id.*). With cause is defined as having: "(i) engaged in criminal conduct, (ii) committed a material violation of Opportunity or Opportunity International Network policy or this Agreement, (iii) engaged in gross negligence in the performance of your duties, (iv) misappropriated funds, (v) engaged in willful misconduct with respect to donors or employees, (vi) engaged in fraud, or (vii) have been insubordinate." (*Id.*)

Plaintiff began her employment on March 18, 2013, and was in the Oak Brook office that week. (*Id.* ¶ 38.) Escarra communicated with Plaintiff on June 2, 2013, January 31, 2014, and February 4, 2014, about being in the Oak Brook office. (*Id.* ¶¶ 39-41.) Escarra did not track Plaintiff's travel schedule or require that Plaintiff notify her when traveling. (*Id.* ¶ 42.) On February 13, 2014, Plaintiff and Escarra had a verbal performance review. (*Id.* ¶ 43.) Plaintiff had prepared her self-evaluation portion of the review. (*Id.*) Escarra made notes regarding a discrepancy between what Plaintiff thought her areas of improvement were and what Escarra thought her areas of improvement were. (*Id.* ¶ 44.) Escarra did not complete the supervisor

section or give certain scores on Plaintiff's review. (*Id.*) At the performance review, Escarra said that she looked forward to Plaintiff working in the Oak Brook office full-time. (*Id.* ¶ 47.)

In March 2014, Plaintiff attended an Opportunity board meeting but asked to be excused from the dinner so she could attend her son's state final basketball tournament. (*Id.* ¶ 49.) In April 2014, Escarra asked Plaintiff to attend and speak at an event for The Global Poverty Project. (*Id.* ¶ 52.) Plaintiff told Escarra that the event conflicted with an event Escarra had promised Plaintiff could attend. (*Id.* ¶ 53.) Plaintiff did attend the Global Poverty Project Event. (*Id.*)

Plaintiff was scheduled to be in the Oak Brook office the morning of May 6, 2014. (*Id.* ¶ 62.) Escarra asked to meet with Plaintiff, asked Stryjak for a copy of Plaintiff's contact, and asked Berezin to review Plaintiff's contract. (*Id.* ¶ 63.) Plaintiff asked her assistant to prepare information about the status of Plaintiff's projects and update Plaintiff's calendar. (*Id.* ¶ 65.) Plaintiff also asked an attorney, Patty Wise, to review her contract. (*Id.* ¶ 67.) At the meeting, Plaintiff was provided with a document that stated Escarra had not observed improvement in the areas of product knowledge and fluency, staff development, and conflict resolution. (*Id.* ¶ 68.) The document also stated that Escarra had observed a decline in overall leadership attributes. (*Id.*) The document also stated that Plaintiff had not "been in Oak Brook/Chicago 7 days" since March 2013. (PSOF ¶ 34.) During the meeting, Escarra referenced but did not offer another position at Opportunity, and Plaintiff did not ask any questions about the possible position. (DSOF, ¶ 70.) At the end of the meeting, Plaintiff asked whether she was being terminated and was told yes. (PSOF ¶ 35.) Plaintiff did not ask Escarra or Stryjak why her employment was terminated. (DSOF, ¶ 71).

**LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Courts deciding summary judgment motions must view facts "in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "[t]he nonmoving party must point to specific facts showing that there is a genuine issue for trial." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). The evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Factual disputes do "not preclude summary judgment when the dispute does not involve a material fact." *Burton v. Downey*, 805 F.3d 776, 783 (7th Cir. 2015). All facts are viewed in the light most favorable to the nonmoving party and all inferences are drawn in the nonmoving party's favor. *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 849 (7th Cir. 2015).

**ANALYSIS**

*Count I*

In Count I, Plaintiff alleges Opportunity committed a breach of contract by failing to make severance payments owed under the contract. To prove a cause of action for breach of

contract under Illinois law, Plaintiff must show: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007) (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. Ct. 2004)). The parties do not dispute the existence of a valid and enforceable contract. The dispute arises over the meaning of the phrase "you will be expected to spend approximately seven days per month working from the Oak Brook office." (DSOF, ¶ 21.)

<u>Contract Interpretation</u>

Opportunity first argues that the contract clearly states that Plaintiff was required to be physically present in the Oak Brook office for seven days per month. "The question of the existence of a contract is a matter of law for determination by the court." *Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 849-50 (7th Cir. 2007) (citing *Arneson v. Bd. of Trs., McKendree Coll.*, 569 N.E.2d 252, 256 (Ill. App. Ct. 1991); *Robinson v. Christopher Greater Area Rural Health Planning Corp.*, 566 N.E.2d 768, 772 (Ill. App. Ct. 1991)). However, "when a contract contains ambiguities that the parties must explain through extrinsic evidence, the trier of fact, not this court, must resolve the conflicting interpretations of the agreement." *Zemco Mfg., Inc. v. Navistar Int'l Transp. Corp.*, 270 F.3d 1117, 1127 (7th Cir. 2001). "In Illinois, '[a]n instrument is ambiguous only if the language used is reasonably or fairly susceptible to having more than one meaning. . . .'" *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998) (quoting *Flora Bank & Trust v. Czyzewski*, 583 N.E.2d 720, 725 (Ill. App. Ct. 1991)).

Opportunity claims that the phrase "from the Oak Brook office" required Plaintiff to be physically present in the Oak Brook office. Plaintiff argues that this phrase required her to work

7

in the Oak Brook and Chicago area, as opposed to working from her home in Michigan. Similarly, Opportunity argues that approximately seven days means seven days. Plaintiff argues that approximately has its plain meaning. Looking at the contract in the light most favorable to Plaintiff, the contract is reasonably susceptible to have more than one meaning. As an ambiguous contract, the trier of fact must resolve the conflicting interpretations.

Cause

Opportunity next argues that Plaintiff was terminated "with cause" and is not owed severance payments. Specifically, Opportunity argues that Plaintiff committed a material violation of the contract by not working from the Oak Brook office, that Plaintiff was insubordinate for failing to comply with the contract and Escarra's instructions, and that Plaintiff was grossly negligent. To the extent these arguments rely on the assertion Plaintiff was required to be physically present in the Oak Brook office seven days per week, whether that was required by the contract is a question of fact as discussed above. Opportunity points to specific situations that constituted gross negligence and/or insubordination; however, the facts and circumstances surrounding each of these situations are disputed by Plaintiff. Opportunity points to Plaintiff's request to attend a function held by her former employer, instead of standing in for Escarra at an event. Plaintiff contends she was promised that she would be able to attend the function held by her former employer. Opportunity argues that Plaintiff was insubordinate in seeking to step out of a board meeting dinner to attend her son's state final basketball tournament. However, Plaintiff attended the dinner. Opportunity also argues that Plaintiff failed to elicit donations directly from donors, but Plaintiff claims that direct fundraising was not required in her contract. Finally, the dispute about Plaintiff advising Escarra about which events Escarra should attend appears to be a difference of opinion over the relative importance of a particular event.

Opportunity's Motion for Summary Judgment is denied as to Count I.

*Count II*

In Count II, Plaintiff alleges an alternative theory of promissory estoppel. Defendant argues that Plaintiff cannot bring a claim for breach of contract as well as one for promissory estoppel. A claim for promissory estoppel under Illinois law "requires a plaintiff to prove that '(1) defendants made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiffs reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment.'" *Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 676-77 (7th Cir. 2005) (quoting *Quake Constr., Inc. v. American Airlines, Inc.*, 565 N.E.2d 990, 1004 (Ill. 1990)). "[A] party may plead a claim for unjust enrichment in the alternative where the existence of a valid contract is questioned." *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 923-24 (N.D. Ill. 2013) (internal citation and quotation omitted.) However if "it is determined an enforceable contract exists then a party can no longer recover under a promissory estoppel theory." *Bohling v. Pharmacia Corp.*, 156 F. Supp. 2d 1010, 1017 (N.D. Ill. 2001) (citing *Doyle v. Holy Cross Hospital*, 708 N.E.2d 1140, 1148 (Ill. 1999).)

The parties dispute over whether they came to a meeting of the minds on the issue of how many days Plaintiff was required to spend working from the Oak Brook office. To that extent, there is a dispute regarding the existence of a valid contract. Defendant's Motion for Summary Judgment is denied as to Count II.

**CONCLUSION**

Defendant's Motion for Summary Judgment [66] is denied.

Date:  February 23, 2016   _____
JOHN W. DARRAH
United States District Court Judge